IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CHARLES ANTHONY HALEY,**

           **Petitioner,**

v.                                               **Criminal No. 2:12-cr-149**

**UNITED STATES OF AMERICA,**

           **Respondent.**

*MEMORANDUM OPINION & ORDER*

Before the Court is Charles Anthony Haley's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 79. The Government opposed the motion and Petitioner did not reply. ECF No. 81. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On October 3, 2012, Petitioner was named in an eleven-count Indictment charging him with Conspiracy to Distribute and Possess with Intent to Distribute 280 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 846 (Count One), and Distribution and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Counts Two through Eleven). ECF No. 15. On November 29, 2012, Petitioner pled guilty to Count One of the Indictment. ECF Nos. 29, 30. According to his Presentencing Report ("PSR"), between January 2010 until July 2012, investigators completed multiple controlled drug purchases from Petitioner in individual amounts ranging from $40 to $350. ECF No. 65 at ¶ 11. In all, Petitioner was attributed with distributing 1,807.759 grams of cocaine base. *Id.* at ¶ 15. In his PSR, Petitioner reported that he suffered from high blood pressure and was taking medication but did not note any other history of any serious or chronic medical conditions or illnesses, and no prior hospitalizations. *Id.* at ¶ 74. Petitioner was

1

assessed a total offense level of 34, a criminal history category VI, and a recommended guideline provision of 262 to 327 months imprisonment. *Id.* at ¶¶ 91-93. On May 29, 2013, the Court imposed a sentence of 148 months imprisonment on Count One, followed by 10 years of supervised release. ECF No. 45. Petitioner is currently incarcerated at FCI Beckley with a projected release date of April 7, 2022. He is scheduled to transfer to a Residential Reentry Center (RRC) on October 7, 2021, to finish his sentence.

On October 7, 2020, Petitioner filed a *pro se* motion for compassionate release. ECF No. 62. On July 1, 2021, Petitioner filed his motion through counsel. ECF No. 79. On July 16, 2021, the Government responded in opposition. ECF No. 81. Petitioner alleges that his underlying health conditions place him at increased risk for serious illness should he contract COVID-19. Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin his period of supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United*

*States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP.

3

As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. Although, Petitioner alleges that he filed a formal request with the Warden at FCI Beckley, he did not submit a copy of the request to the Court. However, the U.S. Probation Office and Petitioner stated that the Warden denied Petitioner's request on June 22, 2020. ECF Nos. 79, 82. Thus, more than 30 days passed since Petitioner filed his request was denied.

#### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify her sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country

have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. At 53-years old, Petitioner argues that he suffers from Type 2 diabetes, hypertension (or high blood pressure) and hyperlipidemia, which place him at increased risk of serious illness should he contract COVID-19. ECF No. 79 at 5. According to his medical records, Petitioner does suffer from these ailments but is receiving medication to control them. *See* ECF No. 80 (Sealed). According to the Centers for Disease Control and Prevention ("CDC"), individuals with Type 2 diabetes and hypertension can be more likely to get severely ill if they should contract COVID-19.[1] However, as of March 23, 2021, Petitioner received both doses of the COVID-19 vaccine. ECF No. 80. According to the CDC, the COVID-19 vaccine is "effective at preventing COVID-19 as seen in clinical trial settings."[2] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals. *Id.* Petitioner has not reported any side effects to the

---

[1] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov*, (Updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[2] *See* Centers for Disease Control and Prevention, "Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html

vaccine. Therefore, Petitioner has not provided evidence showing that he is at high risk for serious illness due to COVID-19 which warrant extraordinary circumstances for compassionate release. *See United States v. Madison*, No. 2:17-cr-80, ECF No. 88 (E.D. Va. Mar. 19, 2021).[3]

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. That is, even if Petitioner were vaccinated, there would still exist a possibility that he *could* contract COVID-19. As of August 3, 2021, the BOP has reported a total of 198 recovered positive cases of COVID-19 for inmates (0 current, 0 deaths) and 89 recovered cases (0 current) for staff at FCI Beckley.[4] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged.

---

[3] Sister jurisdictions have similarly held that because the defendant "has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting." *United States v. Burks*, No. 3:14-cr-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021); *see United States v. Smith*, No. 17-cr-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021), *appeal docketed*, No. 21-1209 (6th Cir. Mar. 2, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").
[4] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/

According to his PSR, between January 2010 until July 2012, investigators completed multiple controlled drug purchases from Petitioner in individual amounts ranging from $40 to $350. ECF No. 65 at ¶ 11. In all, Petitioner was attributed with distributing 1,807.759 grams of cocaine base. *Id.* at ¶ 15. Prior to the instant offense, Petitioner was a criminal offender. Starting at age 20, Petitioner received multiple convictions including for Assault (multiple convictions), Possess Cocaine (multiple convictions), Resist Arrest, Robbery, Trespassing (multiple convictions), Contempt/Fail to Appear (multiple convictions), Distribute Cocaine, and Conspiracy to Distribute Cocaine. *Id.* at ¶¶ 26-39. In all, Petitioner was assessed a total offense level of 34 and a criminal history category VI. *Id.* at ¶¶ 91-93.

To his credit, Petitioner has served most of his 148-month sentence and he is scheduled to be transferred to a Residential Reentry Center (RRC) on October 7, 2021, with a projected release date of April 7, 2022. *But see, United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying compassionate release where the defendant had "served only 40% of his 188 month sentence, which may not afford adequate deterrence to his criminal conduct"). On the other hand, Petitioner was sanctioned in 2017 for Engaging in Sexual Acts. Yet, while in prison, Petitioner has demonstrated evidence of rehabilitation. For example, Petitioner has completed 15 educational courses, is currently enrolled in the GED program, he completed a drug education program and the residential drug treatment program. ECF No. 79. The Court also notes that there has been limited programming available due to COVID-19 lockdowns. However, as noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge,* No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021).

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and

his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show extraordinary or compelling reasons for release due to COVID-19 or based on his family circumstances. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for compassionate release, ECF No. 79, is **DENIED.** Furthermore, Petitioner's *pro se* motion for compassionate release is moot and dismissed. ECF No. 62.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 11, 2021

UNITED STATES DISTRICT JUDGE

8